IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUNTRUST BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-00542 |
| ) | Judge Trauger |
| JERROLD S. PRESSMAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Pending before the court is a Motion for Default Judgment filed by plaintiff SunTrust Bank (Docket No. 10). For the reasons discussed below, the court will defer judgment on the plaintiff's motion until it can review additional submissions from the plaintiff.

In 2005, plaintiff SunTrust Bank ("SunTrust") entered into a loan transaction with Creekside Development, Inc. ("Creekside") relating to the development of certain property in Brentwood and Franklin, Tennessee.[1] On September 30, 2005, Creekside executed a Promissory Note (the "Note") in the amount of $8.2 million in favor of SunTrust (Docket No. 1, Ex. 1), and defendant Pressman executed a Guaranty personally guaranteeing Creekside's indebtedness (*id.*, Ex. 3). Creekside eventually defaulted on the loan. In this suit, SunTrust seeks to recover approximately $4.75 million in unpaid principal and interest from Pressman.

SunTrust filed this suit on June 7, 2011. On July 12, 2011, it filed a Motion for Entry of

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiff's Complaint (Docket No. 1).

1

Default (Docket No. 6), claiming that process was properly served on Pressman (*see* Docket Nos. 4, 5). On July 27, 2011, the Clerk of Court entered default against Pressman (Docket No. 8). On July 28, 2011, SunTrust filed the instant Motion for Default Judgment, seeking a default judgment against Pressman of $4,755,623.49 (plus per diem interest of $2,766.01 for each day after July 12, 2011) and attorney's fees and costs of $475,562.35. (Docket No. 10 ¶ 7.)

The court has identified several potential issues with the plaintiff's request for default judgment. First, it is not immediately apparent from the record that process was properly served on Pressman. On July 5, 2011, SunTrust filed an executed Summons, which listed Pressman's address as 520 Broadway, Suite 660, Santa Monica, CA 90401. (Docket No. 4 at 1.) As the suite number implies, this is Pressman's business address. (Docket No. 10 at 1 n.2.)

The Proof of Service declaration, signed by the process server, indicated that the process server left a copy of the summons and complaint at Pressman's residence on June 21, 2011. (Docket No. 4 at 2.) The declaration contained boilerplate language stating that the process server "left the summons at the individual's residence or usual place of abode with . . . a person of suitable age and discretion who resides there."[2] (*Id.*) In handwriting, the "person of suitable age" was identified as "'Jane Doe' wife, 50 yr Caucasian Female, 5'7", 125 lbs., Blond Hair." (*Id.*)

---

[2] Federal Rule of Civil Procedure 4 provides that process may be properly served on an individual by "leaving a copy [of the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). For service under this provision, it is not sufficient to leave a copy of the summons and complaint at the individual's place of business. 1 Moore's Federal Practice - Civil § 4.92[2] (3d ed. 2011).

Notably absent from the Proof of Service, however, was the address of the residence visited by the process server. In its Motion for Default Judgment, SunTrust asserts that the service occurred at "[Pressman's] residence located at 10 26th Street, Venice, California 90291." But this address is not mentioned anywhere in the Proof of Service declaration signed by the process server, and no other piece of evidence in the record supports the assertion that process was served at the Venice address.[3] Nor, for that matter, is there any evidence that the Venice address is, in fact, Pressman's residence.

Without such evidence, the court is not satisfied that service was proper. *See* 1 Moore's Federal Practice - Civil § 4.103 (3d ed. 2011) ("[P]roof of service should indicate the location where the summons was served . . . ."); *cf., e.g.*, *Thanco Prods. & Imps., Inc. v. Kontos*, No. H-08-3046, 2009 U.S. Dist. LEXIS 18912, at *3-4 (S.D. Tex. Mar. 3, 2009) (in support of a motion for entry of default, the plaintiff submitted evidence that the address of service was the defendant's abode, including a voter registration and shipping records). This raises the possibility that the court may vacate the entry of default. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385-86 (7th Cir. 2008) (holding that a district court may vacate an entry of default *sua sponte*); Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause . . . .").

Accordingly, the court hereby **ORDERS** the plaintiff to submit either (1) a legal memorandum supporting the assertion that service of process, and thus entry of default, was

---

[3] For example, the Declaration of Service submitted by one of SunTrust's attorneys in support of SunTrust's Motion for Default simply recites various dates on which the summons and complaint were mailed to various California addresses. (*See* Docket No. 5.)

proper on the existing record or (2) competent evidence supporting the assertions that the process server served process at the Venice address and that the Venice address is Pressman's dwelling or usual place of abode.

Second, there is a lack of evidence supporting the plaintiff's assertions that Pressman owes a combined total of $4,755,623.49 in outstanding principal and accrued interest and that a $2,766.01 per diem interest rate for July 12, 2011 forward is proper. The only evidence submitted by the plaintiff on these points is the declaration of Kevin C. King, the First Vice President for SunTrust. (*See* Docket No. 10, Ex. 1.) In his affidavit, King simply states:

> The amount of principal, interest, and fees (not including attorney fees and costs of collection) owed by Pressman under the Note and Guaranty was $4,755,623.49 as of July 12, 2011, plus per diem interest in the amount of $2,766.01 accruing daily after July 12, 2011.

(*Id.* ¶ 4.)

The plaintiff has submitted neither documentary evidence nor supporting calculations regarding the applicable interest rate. Specifically, the Note provides for "a variable rate of interest equal to 30-Day LIBOR Rate, plus 200 basis points per annum" (Docket No. 1, Ex. 1 at 1), but King's declaration does not explain the interest rate applicable to the Note's balance at any particular point in time.[4] The plaintiff argues that the amounts due under the Note have been pleaded in the Complaint and are thus deemed admitted (Docket No. 10 at 2), but the Complaint

---

[4] Notably, the most recent Modification Agreement between SunTrust and Creekside, dated September 1, 2010, stated that, as of August 31, 2010, Creekside and Pressman owed $4,132,827.03 in principal and had accrued interest of $22,960.15. (Docket No. 1, Ex. 7 at 1.) That agreement stated that the per diem interest rate was $717.50. (*Id.*)

merely alleges that, as of May 31, 2011, the "balance owed" was $4,624,170.54. (Docket No. 1 ¶ 21.)

Accordingly, the court hereby **ORDERS** the plaintiff to submit more detailed evidence and calculations regarding the accrued interest owed by Pressman and the applicable per diem interest rate.

Third, in its Motion for Default Judgment, SunTrust seeks approximately $475,000 in attorney's fees and expenses.[5] In support of this figure, SunTrust has submitted a declaration from one of its attorneys that states that, over the past three years, SunTrust has incurred over $35,000 in unreimbursed collection costs. (Docket No. 10, Ex. 2 ¶ 6.) As for attorney's fees, the declaration states that, "[i]n collection actions, it is reasonable for plaintiff's counsel to be awarded attorney fees and expenses of up to one-third (33.3%) of the total amount owing, plus interest and costs." Despite this, SunTrust states that it is seeking only to recover attorney's fees of "ten percent (10%) of the total amount owed to it." (*Id.*) Significant fees are appropriate, the declaration claims, in part because the defendant has a history of litigiousness and, "[w]hen SunTrust forecloses the deed of trust, it reasonably anticipates significant additional litigation costs in state and federal court." (*Id.* ¶¶ 6-7.)

The court is not inclined to award such a large amount of fees, particularly when the award is premised on speculative fees that the plaintiff has not yet incurred and may never incur.

---

[5] The Guaranty executed by Pressman provides that Pressman "agrees to pay on demand all reasonable costs of collection, including . . . attorney's fees . . . that [SunTrust] may incur in enforcing the terms of this Guaranty." (Docket No. 1, Ex. 3 at 9.)

Under Tennessee law,[6] the court should consider the following factors when determining a "reasonable attorney's fee" pursuant to the Guaranty's fee-shifting provision:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

*Johnson v. Hunter*, No. M2000-03099-COA-R3-CV, 2001 Tenn. App. LEXIS 795, at *3 (Tenn. Ct. App. Oct. 25, 2001) (applying the factors in a *quantum meruit* claim for attorney's fees); *see also United Medical Corp. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 136 (Tenn. 1986) (reciting similar factors); *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980) (same).

In *Advanced Accessory Systems, LLC v. Gibbs*, 71 Fed. Appx. 454, 464 (6th Cir. 2003), the Sixth Circuit applied Michigan law but employed the same factors listed in *Hunter* when

---

[6] The Guaranty provides for the application of Tennessee law. (Docket No. 1, Ex. 3 at 9.)

reviewing the amount of attorney's fees awarded pursuant to a contractual fee-shifting provision. Notably, the court stated that "whether an attorney is working on a contingency basis should be considered, but only as one factor among several." *Id.*

Here, the court does not have enough evidence to make an informed determination under the relevant factors. Accordingly, the court hereby **ORDERS** the plaintiff to submit a declaration regarding the factors listed above. The declaration should include evidence regarding the hours spent by the plaintiff's attorneys on this matter, and whether the plaintiff's attorneys are charging a fixed or contingent fee.

The plaintiff is **ORDERED** to file the submissions discussed in this Order on or before August 31, 2011. The court will defer judgment on the Motion for Default Judgment until it can review the plaintiff's submissions.

It is so Ordered.

Entered this 16th day of August 2011.

_____
ALETA A. TRAUGER
United States District Judge